We'll begin with Fowler v. Stitt, 23-5080. Mr. Wren, are you ready? Good morning, and may it please the Court, I'm Peter Wren on behalf of Appellants. This case challenges Oklahoma's reversal of a long-standing policy that previously allowed transgender people to amend their birth certificates for at least a decade and a half without incident. As the complaint alleges, the state's own officials directly responsible for birth certificates agreed that this prior practice maintained the accuracy and integrity of vital statistics. But when the Governor found out about it, he replaced the head of the agency and took this ability away from transgender people because, in his own words, people are created by God to be male or female. That one word on an identity document can have profound consequences. When Ms. Fowler presented identification in the past, outing her as a transgender woman, she was openly denied service on one occasion and attacked with a derogatory slur on another, causing her fear for her safety every time she left her home for months on end. The Government's policy triggers heightened scrutiny under equal protection and privacy, but the complaint also plausibly alleges that it fails even rational basis review. As an initial matter, the policy discriminates based on sex, no matter how you look at it. First, even if you view sex narrowly for purposes of equal protection as nothing more than a person's assigned sex, or what defendants refer to as biological sex, that's still the reason why defendants denied Ms. Fowler an amended birth certificate. Vostok holds that that is sex discrimination. Take, for instance, a woman who is not transgender. Let me stop you first. What do we do about the fact that in Vostok the decision repeatedly states that it's limited to the context of a Title VII case and we're here on an equal protection claim? I don't think that that's a valid distinction because Vostok makes clear that it is impossible to discriminate against a transgender person without discriminating against them on the basis of sex. Well, it says that, and then it explains it, and the explanation doesn't seem to fit the circumstances here. How do you translate it? Do you remember the explanation given by the court in Vostok? Absolutely, Your Honor, and I do think that the logic transfers over here precisely. Okay, well, explain that. Explain the logic in Vostok and then translate it to the circumstances. Certainly, and I think it's easiest to understand this at the level of the individual. So let's take, for example, a woman who is not transgender. She has access to a female-designated birth certificate that she can use to prove who she is when applying for— Go through the Vostok analysis. Certainly. If you're stating what you quoted correctly, the court explains why that is sex discrimination, why it's gender discrimination, what's your understanding of what that statement was in Vostok? I can read it to you if you don't remember it. Your Honor, I think Vostok essentially holds that if the reason for the adverse treatment that a person has experienced is because of their birth-assigned sex, you know that's sex discrimination. And here, if Ms. Fowler— That's not what it says. I mean, that may be accurate. That may be a violation of Equal Protection. But what it said is you have two women, one's transgender, one's not, working for a company, and if they're treated differently because of their birth gender, then that's sex discrimination. To translate to this situation, you would say here are two men. One is transgender. One was born male and is still male. And they are treated differently, but they're not. Neither of them can change the sex on their birth certificate. So where am I goofing there? Well, in that hypothetical that you laid out, the transgender man would have avoided the injury that he experienced in terms of not having a birth certificate that matches his gender identity if he had been assigned male at birth. And Vostok makes clear that equal application of a rule doesn't make it neutral. It was crystal clear that if an employer fires both transgender men and transgender women, it is still discriminated on the basis of sex, even though it hasn't treated one sex better or worse than another sex. Right. But it says that the discrimination against the male—against the transgender employee in Vostok was because she, the transgender female, is treated differently because of the gender at birth. How is there a discrimination between a transgender male and one who hasn't changed gender if neither can change the birth certificate? The difference in injury there is that one person has access to a birth certificate that they can use, and the other person does not have access to a birth certificate that they can equally use to prove who they are. But that's the consequence of the government action. The government action does not in itself discriminate. Neither person, the transgender male or the non-transgender male, can get a birth certificate changed. I disagree with that, Your Honor. I think the government's argument boils down to it is not discriminatory at all for no one to be able to change the sex list on their birth certificate. That's their argument. But that's akin to saying that a rule that no one can wear yarmulkes is neutral, or that a law that no one can marry a person of the same sex is neutral. The Youngster example is a good one. It's just not in Vostok. It's not in Vostok, but it is in the Supreme Court precedent. That example comes from Alexandria v. Brace. And the Supreme Court itself has recognized that there are rules that on their face we know are discriminatory, even if theoretically they could be applied equally to everyone. That's not definitely neutral. The difference between facial neutrality and disparate impact, is that the argument you're making here? That even if the law is facially neutral, if there's a disparate impact, particularly if you can show a motive of animosity, that then you can meet a test under the Equal Protection Clause. That's certainly one way in which an equal protection violation can be established. But I want to be clear that there is disparate treatment on its face here. And to return to our example of the yarmulkes, let's suppose that you can imagine some instances in which someone might wear a yarmulke for non-religious reasons. Perhaps someone wants to dress as a rabbi for Halloween. That wouldn't convert the rule against randomicas into a disparate impact rule. It would still on its face be disparate treatment. And that's the same issue here. When you ban the sex change designations that this policy bans, it is on its face a facial classification against transgender people. But you're right, Your Honor, that we do also allege that even if you were to view this policy as facially neutral, we do also satisfy the other criteria for showing discriminatory intent. Because we know that there is, in fact, harm through the denial of certificates that people can equally use when they're transgender. Let me add some of the practicalities here. The governor's executive order on its face simply says you can't do anything with respect to birth certificates that's not allowed by statute. So if this was allowed by statute before that executive order, and that was certainly the way it was understood by the department, what was changed by the executive order? Why did it have these consequences when on its face it doesn't change any law? It says essentially obey the law. Well, two points, Your Honor. First of all, I think the executive order is quite clear in telling the agency, you are not allowed to continue to provide these changes that you were previously providing. The second point is that, as we've alleged in the complaint, the governor's office specifically instructed the agency, do not change the gender markers of transgender men and transgender women who come before you seeking to correct their birth certificates. But if it was lawful before, couldn't you bring an action against the agency for saying you're not doing something that you're lawfully required to do, and the executive order doesn't change that? I think we can't rewrite the executive order. It says what it says. The basis in what it does is different from the action that it takes. The action that it takes is to say to the agency, I'm telling you very clearly, you are not allowed to continue doing what you were doing before. And what language in the executive order says that? I think it says it. I was surprised when I read the executive order after reading your brief because it doesn't seem to do anything but say obey the law. It has preamble that you don't like. Fine. But in terms of the provisions of what it ordered? I think that there is language in the executive order talking about a prohibition against altering or changing the sex or gender on your birth certificate. But separate and apart from that, we've alleged that in terms of how it's enforced, there have been specific communications outside the executive order, to be clear, from the governor's office to the state agency saying you are not allowed to continue correcting the gender markers of transgender men. And that's part of your claim? That is part of our claim, absolutely. Now, the second practical thing is, when do they have to use a birth certificate? They can't use a driver's license. By statute, you can change the gender on a, I think it's by statute, maybe regulation. You can change the gender on a driver's license, which is the typical form of ID. When did your clients have to use a birth certificate when they could have used a driver's license to accomplish the same thing? The complaint details a number of instances in which our plaintiffs were required to present their birth certificates because the driver's license was insufficient. One example of that, for example, is that Mr. Hall was required to present a birth certificate when he wanted to update his tribal identification card. Other plaintiffs were required to present their birth certificates when interacting with financial institutions and healthcare institutions. So, it may be true that birth certificates are not used as frequently as driver's licenses for purposes of identity, but they are used in critical chapters of life, including, for example, when a person starts a job or enrolls in school or applies for a government program. And more to the point, the district court recognized that defendants admit that birth certificates are required to participate in modern life. And you can find that at Appendix 75. So, there's no question between the parties or the district court that birth certificates are a required form of identification. Counsel, can I ask you about your equal protection claim? If we were to determine that this is sex-based discrimination, do we have to decide whether transgender Oklahomans also qualify as a quasi-suspect class, or are those essentially two roads to the same destination of heightened scrutiny? Those are two roads to the same destination of heightened scrutiny, Your Honor, but I think it's fair to say that there's considerable confusion among district courts in this circuit about whether or not this court's decision in Brown answered the question. I think Brown, on its face, does not do that. I think Brown does do it. I mean, it says the Ninth Circuit case maybe needs to be reconsidered, but, and then it goes on and says, but we follow it. And cases since then have recognized it as following it. So, this panel is really in a difficult position to recognize a quasi-class, and frankly, the Supreme Court hasn't been very receptive to more quasi-classifications. I mean, your fallback argument is you can win on rational basis anyway, right? That's right. Two responses, Your Honor, and then I hope to reserve the balance of my time for rebuttal. The first is that I think Judge Henry's opinion in Brown was very carefully worded, and it said that we are not reaching this issue in this case because the plaintiff's pro se allegations are too confused to allow proper analysis. That is not the language of the court that is deciding the issue once and for all. It's the language of the court that recognizes that it doesn't have the tools to decide an issue. Moreover, Brown specifically recommends that ongoing research into gender identity would be relevant to answer the scrutiny question. And in the last 29 years since Brown, there have been major advances in the understanding of gender. But the second point that I would make, Your Honor, is that it's incredibly important for this court to apply faithfully the same suspect class factors that are applied to any group that comes before the court invoking heightened scrutiny. I'll reserve the balance of my time for rebuttal. Thank you. Good morning. Audrey Weaver for Defendants Appellees. May it please the court. Biological sex is not a meaningless label. The Supreme Court has confirmed that sex, like race and national origin, is an immutable characteristic determined solely by the accident of birth.  by permanently recording that biological sex on a certificate of birth. It does not. Wait, wait, wait. There's nothing to prevent the state from keeping the original birth certificate. What the plaintiffs want is something they can carry with them that amends it. Correct. What the plaintiffs want is to erase the biological sex on the birth certificate and supplant it with a gender identity designation. No, no, no. You have the original birth certificate. You retain the original birth certificate. They want an amended birth certificate that matches their driver's license and matches their current gender. What's the big deal? Well, Oklahoma law has a policy now that the sex designation on the birth certificate means a biological sex designation. So that's the policy. So any change to that that reflects something other than biological sex, whether it's amended or original, makes that inaccurate because it no longer reflects biological sex. It's transformed into something that Oklahoma has said it is not. And in order to show an equal protection violation here, plaintiffs have to allege some kind of intentional discrimination. Sorry, go ahead. Would you agree, though, that the Oklahoma state action and policy here specifically is targeted at Oklahomans who now identify with a sex or gender that was not assigned to them? No, not at all. It's not targeted. So who else does it impact? It impacts everybody, and that's because everybody has a biological sex. And according to the complaint, which this court has to take as true, everyone has a gender identity. That's paragraph 20. But the complaint also talks about how a cisgender person would have no desire, need, or intention to ever go change or amend their birth certificate. So, again, even though it may be the policy facially neutral or have equal application, it really only impacts a certain group who, I think the record in the complaint alleges, the governor and other Oklahoma officials were unequivocal about that specifically who they were targeting. Am I reading that wrong? Well, that doesn't affect the operation of the law in the face of the law, which contains no distinction whatsoever to any person. There's nothing on the face of the law that says transgender people cannot amend and any other group or individual can amend. So it is facially neutral. But even if it's facially neutral, if it has a disparate impact, and you can show that, as Judge Federico has pointed out, it was targeted at transgender Oklahomans, you meet one of the prongs for an equal protection claim, don't you? I mean, we're just on a motion to dismiss here. Right. So in order to show a disparate impact, they would also have to show a discriminatory purpose. But, again, I think we've got some pretty good evidence of the discriminatory purpose as they've alleged in their complaint, which we have to take as true. Well, I would point the court here to the Personnel Administrator of Massachusetts v. Feeney case. And there, there was a Massachusetts law that gave preference to a group of military veterans that was 98% male. So clearly a disproportionate impact on women there. And the court said that's not enough. When we're talking about what they did in Texas. But it didn't have the governor of Massachusetts saying, I'm doing this because I want to prevent women from getting jobs. The governor's statement here does not raise any plausible inference of animus whatsoever. There are two different things that are a non-obvious purpose behind that. Enforcement of the law. There is no law that allows for the amendment. And also a recognition of the binary biological nature of sex. But the reason one could infer a discriminatory purpose is it's hard to see what it accomplishes. Your task, it seems to me, is to distinguish this case from Romer. I was surprised it wasn't cited. But, I mean, there they threw out the Colorado amendment to the Constitution because it said the amendment seems inexplicable by anything but animus toward the class it affects. And how do you respond to that here? None of the explanations for what this accomplishes seem to hold up. So give it a try. Yes, OK. So let's go to the state interests here that are rational and legitimate. There is an interest in the integrity and accuracy of vital statistics. We've already talked about that. You keep the original birth certificates. The accuracy of your vital statistics is completely within your control. Just like when an adopted child goes back and changes their birth certificate to show their adoptive parents rather than their birth parents, Oklahoma hangs on to the original one that, for vital statistic purposes, shows the birth parents. What's the difference? So here when we're talking about, we also talk about uniformity. So the fact that this sex designation, we want it to mean the same thing for everybody, and that's biological sex. That's another interest. And why is reporting biological sex important? Because there are times when the state can constitutionally legislate based on the physical differences between men and women. In fact, this court has... Well, and again, you have the original birth certificate. And all you need to do is rely on the original birth certificate for any legislation that you want to do. Your next argument is about sports, and yet your own statute doesn't look at birth certificates. It relies on an affidavit of the person to say, what was my sex at birth? So your reasons and reality aren't meshing. Well, the fact that Oklahoma law doesn't currently require somebody to disclose their birth certificate doesn't mean that it's not a ready and easily way of verifying biological sex in other circumstances. And there is Oklahoma law that relies on... Again, why can't they use the original birth certificate that they keep on file? Well, the question is not whether the Oklahoma law is something that's wise or something that is perfectly drawn or whether it's rational. It's whether it's rational. That's up for grabs. Well, the rationality... Yeah, explain. When we go to the rationality... So let's look maybe at Bray v. Alexandria Women's Health Clinic. There was an argument that abortion, because it only impacts women, has to target and invidiously discriminate against women. And the court rejected that there, and they said there's common and respectable reasons other than animus. And that's exactly the same thing here. There's common and respectable reasons why the state might want to permanently record somebody's biological sex, whether they need it at some point in the future. But you do permanently record their biological sex. Absolutely. There are really good reasons why Oklahoma would want to have accurate records of people's sex at birth, and they do. And nothing about having an amended birth certificate changes that. That's the irrationality that we're struggling with. Well, again, when we're talking about whether it's unconstitutional, that's a significantly high burden. And I think that goes to the question of whether this is wise. What's the harm in a different policy? But we have to look at the policy that Oklahoma adopted here. And it's not irrational to want to keep all the documents the same, to want to consistently have the sex designation be the same. But, counsel, how would you respond to the plaintiff's argument here that if you want accurate vital statistics, you should allow the amendment because, as Judge McHugh has said, the original is still on file with the state of Oklahoma. It gets amended to reflect the fact that this Oklahoma citizen has gone through transition and now is a different gender. Aren't you harming the interest you're saying that you're trying to protect by not allowing these amendments? No, because, again, the purpose is to record the biological medical determination that's made at birth. And that is an objective fact that's knowable at birth, and that does not change. The physician has a duty to certify the facts of birth, including the medical information, and that is a determination that's made at birth on the birth certificate. But if it only matters at birth, then why allow Oklahomans to change birth certificates for adoption or parentage or name changes or any other reasons? Why just sex? Yeah, so that goes to the objective and knowable quality of the information there. It's immutable, and it makes rational sense. Even parents at birth are immutable. I mean, my adoptive mother is immutable. You have one woman give birth, and you allow me to amend my birth certificate to put my adoptive mother. How is that different than the immutable sex at birth? So that's a policy determination that Oklahoma's made that when we're talking about the parents, we want it to record the parent-child legal relationship, and that can change. Adoption can change it. Paternity can change it. So again, it makes rational sense for the state to treat that differently because we want that to reflect the parent-child relationship. Explain for me the rational sense of allowing Oklahomans to modify their driver's license to reflect their current gender, but not to modify their birth certificate to do the same. I think that actually highlights why this policy is so rational because, and not invidious against transgender people as a class, because this is a different document. This is a document that's more of a permanent record. This is something that even though there are circumstances we allow you to change, it is not regularly changed. When you talk about a driver's license, you have to renew it frequently. There's different information on it. You carry that in your pocket. So the fact that Oklahoma may say, hey, you guys can change your sex on your driver's license, but when it comes to the birth certificate, we want a permanent record there of your biological, physical sex. That makes sense because these are two different documents, and one is more permanent and it's supposed to reflect the permanent nature of the facts at birth, which do not change. Now, going back to the discrimination here, this law does not treat anybody differently. It also doesn't condition any benefits, burdens, privileges, liabilities. All it does is record somebody's biological sex at birth. This is not a differential treatment. This is not something that treats men differently than women. All it does is recognize the biological sex. And when we have differential treatment, it's a touchstone of equal protection. And without that differential treatment, a law does not discriminate. Well, what about if you have disparate impact and animus? Well, again, that still is not a differential treatment here. Well, is it a grounds for an equal protection claim? Yes, if you can show disparate impact and an invidious purpose. But that's, again, a very high bar. And I'd like to return maybe to the Yamaka example in the Bray v. Alexander Health Clinic, because there the court explains that there are some activities that may be such an irrational object of disfavor that to ban them or to modify them when only one group is engaged in it is going to be evidence of invidious discrimination. That's not the case here. There are a lot of rational reasons why a state... That's what I'm still not seeing. Give me one thing that the state can't do that it wants to do that would be prevented by allowing a transgender adult to change the sex on an amended birth certificate. I'm not aware of any, but I could be missing something. Well, again, this goes to it has to be so irrational that nothing but animus could illustrate the motive behind it. That's not... Well, wouldn't you infer that if there's no purpose that you can identify that's satisfied by this requirement that you can't change? Right, so the purpose is we've already been over the uniformity of the sex designation, the accuracy of the records permanently that are supposed to be recorded, and also, again, using that... We've gone over those things, and they don't make sense when you can keep the original birth certificate. Well, again, we're looking at whether the policy is unconstitutional. Is it unconstitutional to say we want it permanently to record biological sex? It's unconstitutional to say that that is your rationale when that rationale makes no sense. And here, you have an accurate record with the original birth certificate. So when you say, oh, we can't allow these amendments because we won't have an accurate record, we sit here and we go, hmm, there's a disconnect there. What could be the reason for this? It still is not going to be accurate if it's amended to reflect anything other than biological sex. When Oklahoma has said we wanted to record biological sex because we don't want different documents floating out there that have inconsistent and conflicting information, this is something that maybe somebody will want to rely on when they're talking about privacy interests in bathrooms, when they're talking about maybe separating inmates based on sex. All you have to do in those contexts is say, we will only look at your original birth certificate. Now, you may have other issues that arise from that, but it doesn't interfere with your ability to do that. And respectfully, I think that goes back to the standard that we don't have to show that this is a perfect law. We don't have to show it's most narrow means. We just have to show that it's rational and it's important interests, and this is a policy decision that the state should be allowed to make. There's nothing in the Constitution that requires the state of Oklahoma to erase sex on a birth certificate, biological sex, when it's decided that that's what it wants to do. That's a rational policy, and this court should affirm the district court's dismissal because there's no set of facts that can support a plausible claim for relief. Counsel, I know your time's about up, but one more question. Does the state of Oklahoma recognize transgender persons as an existence of a classification at all? In other words, do you dispute the American Medical Association and others who use diagnostic criteria for gender dysphoria if this even exists at all? As far as in the quasi-suspect classification situation, I don't think there's any dispute that transgender people exist, sure. But it's just sort of a status or recognition, medically or legally. Yeah, there's no dispute about that here, and I think plaintiffs have defined transgender as being a gender identity that differs from the assigned sex at birth, and we don't have any factual dispute with that. Well, and it's a motion to dismiss, so we have to take it as true. Right. Yes. Thank you, Counsel. Thank you. Thank you. There are two ways to establish an equal protection violation. One is through a facially discriminatory classification, and another is a mutual law that's nonetheless motivated by discriminatory intent with disparate impact. I want to be clear that both of those grounds are established based on factual allegations in the complaint. In other words, this is a facially discriminatory policy because that is what exactly the complaint has alleged. The executive order made very clear that it was targeting people who have a need to change the sex listed on their birth certificate. That is transgender people's class, and that's not disparate impact. But as I think this Court has made clear, there is also ample factual allegations to establish that there was discriminatory intent here based on the fact that transgender people are, of course, harmed by the government's policy. And all the other factors that show you that there's discriminatory intent, like departure from unusual procedures, for example, and the language that was used around the time of the policy's adoption also points in favor of this class being targeted. But I think it's important for this Court to be clear that both of those grounds are established by the complaint when, if we are fortunate enough to go back on remand, the district court will need to set out, well, what are the elements and pieces of evidence that plaintiffs will have to ultimately reduce to prove their case. So we would ask this Court for making both points clear in its decision. Counsel, can I ask one question about your informational privacy claim? In your brief, you talk about the expectation of privacy and the deeply personal and private and intimate information of the transgender status. But I'm wondering when that attaches, meaning the gender dysphoria diagnosis, as I recall, has a certain period of time, say six months before, while someone's exhibiting certain characteristics, before that diagnosis would be made. Does that expectation of privacy attach only if there is a medical diagnosis of gender dysphoria before that and sort of how you draw those lines? I don't think that it attaches at the point of a medical diagnosis. This Court's precedents have never drawn the line quite that finely. It's instead asked the question, well, is this information highly personal and intimate? And a person's transgender status clearly meets that criterion regardless of whether or not they've had a medical diagnosis of gender dysphoria. Thank you, Counsel. Thank you. Case is submitted. Counselor excused.